1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9
10
11
12

_____
                                                    )
NAM CHUONG HUYNH, *et al.*,              )
                                                    )          No. C13-0723RSL
                              Plaintiffs,           )
                                                    )
        v.                                          )
                                                    )          ORDER DENYING MOTION TO
AKER BIOMARINE ANTARCTIC AS, *et al.*, )          DISMISS FOR LACK OF
                                                    )          PERSONAL JURISDICTION
                              Defendants.          )
_____)

13        This matter comes before the Court on "Defendants' Motion to Dismiss for Lack

14   of Personal Jurisdiction." Dkt. # 44. Plaintiffs allege that defendants were negligent in

15   providing defective equipment on a vessel in Montevideo, Uruguay, and are responsible for the

16   injuries Mr. Huynh suffered when he came into contact with the equipment. Defendants, the

17   Norwegian owner and operator of the vessel, move to dismiss the Amended Complaint pursuant

18   to Fed. R. Civ. P. 12 because the Court lacks personal jurisdiction over them. Having reviewed

19   the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

20

---

21       [1] Much of the evidence submitted by the parties is not based on the personal knowledge of the

22   declarant or is otherwise inadmissible. The Court has not considered this information, including, among
     other things, Mr. Black's summation of employment documents that have not been provided, Mr.

23   Eikrem's conjecture regarding the source of merchandise supplied by Rena International, and Mr.
     Huynh's assertion that defendants requested his personal participation in the refitting of the M/V

24   ANTARCTIC SEA.
         This matter can be decided on the papers submitted. Plaintiffs' request for oral argument is

25   therefore DENIED.

26

ORDER DENYING MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION

1

2

3

4

5

6

7

8

9

10

11

12

        Plaintiffs have the burden of demonstrating that the Court may exercise personal

jurisdiction over defendants.  In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d

716, 741 (9th Cir. 2013).  In evaluating defendants' jurisdictional contacts, the Court accepts

uncontroverted allegations in the complaint as true.  Menken v. Emm, 503 F.3d 1050, 1056 (9th

Cir. 2007).  If a jurisdictional fact is disputed, however, plaintiffs cannot rely on the bare

allegations of the complaint and must come forward with additional evidence.  Marvix Photo,

Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).  Conflicts in the evidence

provided by the parties must be resolved in plaintiff's favor.  Schwarzenegger v. Fred Martin

Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  Because the Court did not hear testimony or

make findings of fact, plaintiffs "need only make a prima facie showing of jurisdiction to

withstand a motion to dismiss."  Wash. Shoe Co. v. A-Z Sporting Goods, Inc., 704 F.3d 668,

671-72 (9th Cir. 2012) (internal quotation marks omitted).

13

14

15

16

17

18

19

20

        Pursuant to Fed. R. Civ. P. 4(k)(1)(A), federal courts ordinarily follow state law

when determining the extent to which they can exercise jurisdiction over a person.  Daimler AG

v. Bauman, __ U.S. __, 134 S. Ct. 746, 753 (2014).  The Washington Supreme Court has held

that, despite the rather narrow language used in Washington's long-arm statute, RCW 4.28.185,

the statute "extends jurisdiction to the limit of federal due process."  Shute v. Carnival Cruise

Lines, 113 Wn.2d 763, 771 (1989).  The Court therefore need determine only whether the

exercise of jurisdiction comports with federal constitutional requirements.  Easter v. Am. W.

Fin., 381 F.3d 948, 960 (9th Cir. 2004).[2]

21

22

23

24

        In order to justify the exercise of jurisdiction over a non-resident under the federal

constitution, plaintiffs must show that each defendant had "certain minimum contacts with [the

forum] such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice."  Int'l Shoe Co v. Washington, 326 U.S. 310, 316 (1945) (internal quotation

25

26

        [2] Plaintiffs are not asserting that service on defendants was proper under Fed. R. Civ. P. 4(k)(2).

ORDER DENYING MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION          -2-

marks omitted).  Two different categories of personal jurisdiction have developed, namely "general jurisdiction" and "specific jurisdiction."  "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  Goodyear Dunlop Tires Operations, S.A. v. Brown, __ U.S. __, 131 S. Ct. 2846, 2851 (2011) (quoting Int'l Shoe, 326 U.S. at 317).  Specific jurisdiction, on the other hand, "focuses on the relationship among the defendant, the forum, and the litigation" and exists when "the defendant's suit-related conduct [creates] a substantial connection with the forum State."  Walden v. Fiore, __ U.S. __, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks and citations omitted).  Both types of jurisdiction are considered below.

**(A)    General Jurisdiction**

Plaintiffs argue that defendants Aker BioMarine Antarctic AS ("AKAS") and Aker BioMarine AS II ("AKAS II") are subject to the general jurisdiction of Washington courts because a subsidiary of AKAS, Aker BioMarine Antarctic US, Inc. ("AKASUS"), has constant and pervasive contacts with this forum.  The Court assumes, for purposes of this analysis, that AKASUS' contacts can be imputed to both of the named defendants.[3]  Nevertheless, there is no evidence from which one could plausibly infer that AKASUS is "at home" in Washington.  The Supreme Court has recently made clear that the type of contacts that will make a corporation subject to jurisdiction for all purposes are, for both practical and fairness reasons, generally limited to the place of incorporation and principal place of business.  "Those affiliations have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily

---

[3]  This assumption is dubious in light of the Supreme Court's rejection of a broad agency theory of jurisdiction (Daimler AG, 134 S. Ct. at 758-60) and the lack of an agency relationship between AKAS II and AKASUS.

ORDER DENYING MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION        -3-

ascertainable.  These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims."  <u>Daimler AG</u>, 134 S. Ct. at 760 (internal citations omitted).

AKASUS is a Delaware corporation with its principal place of business in New Jersey.  Although it has a small office in Washington, neither it nor the named defendants can be deemed "at home" in the forum under <u>Daimler AG</u>.  General jurisdiction over defendants does not, therefore, exist.

**(B)   Specific Jurisdiction**

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy (*i.e.*, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)."  <u>Walden</u>, 134 S. Ct. at 1121 n.6.  The state's authority to bind a non-resident defendant is justified only if there is a sufficient connection between the defendant, the forum, and the cause of action.  <u>Helicopteros Nacionales de Columbia, SA v. Hall</u>, 466 U.S. 408, 413-14 (1984).  The Ninth Circuit applies a three-prong test when determining whether to exercise specific jurisdiction over a non-resident:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

<u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1111 (9th Cir. 2002).

**(1)  Purposeful Availment**

Plaintiffs argue that defendants (or their related companies) engaged in a series of

ORDER DENYING MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION          -4-

separate and distinct business transactions with plaintiff's employer, Marel Seattle, over an eight-year period, thereby purposefully availing themselves of the privilege of conducting activities in Washington and enjoying the benefit and protection of its laws.  Having failed to establish this court's general, all-purpose jurisdiction over defendants, plaintiffs cannot simply compile all of defendants' contacts with Washington, regardless of whether they have any connection with plaintiffs' claims, in order to justify the exercise of specific jurisdiction. Specific jurisdiction is, by its nature, suit-related and limited to ensure that defendants "have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring).  As described in Burger King Corp. v. Rudzewicz, the "fair warning" requirement is satisfied if defendants intentionally direct their activities at residents of the forum "and the litigation results from alleged injuries that arise out of or relate to those activities." 471 U.S. 462, 472 (1985) (internal quotation marks omitted, emphasis added).  "A court may exercise specific jurisdiction [as opposed to general jurisdiction] over a foreign defendant if his or her less substantial contacts with the forum give rise to the cause of action before the court.  The question is whether the cause of action arises out of or has a substantial connection with that activity."  Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001).

Plaintiffs offer no case law that would sanction the compilation of contacts that are factually and temporally remote from plaintiff's cause of action when evaluating contacts for specific jurisdiction purposes.  Because the focus of the specific jurisdiction analysis is whether defendants' suit-related conduct created a substantial connection with the forum (Walden, 134 S. Ct. at 1121), the Ninth Circuit has not been willing to consider surrounding, unrelated contacts of the parties in this context.  Paramount Farms, Inc. v. Hai Jyi Foods Co., 121 F.3d 716 (9th Cir. 1997) ("[A]ctivities within the forum state unrelated to the claim at issue do not constitute grounds for specific jurisdiction.") (unpublished decision); Thos. P. Gonzalez Corp. v. Consejo

ORDER DENYING MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION          -5-

1  Nacional de Produccion de Costa Rica, 614 F.2d 1247 (9th Cir. 1980) (three and a half year

2  relationship between the parties encompassing fifteen prior transactions would not be considered

3  when determining whether defendant's actions with regard to the sixteenth contract constituted

4  purposeful availment).  Because only the contacts related to the negotiation and performance of

5  the M/V ANTARCTIC SEA contract arguably gave rise to plaintiffs' claims, the Court will

6  consider only those contacts when evaluating whether defendants purposefully availed

7  themselves of the privilege of conducting business in Washington.

8          In July 2011, AKAS contacted Marel Seattle to inquire whether it would provide a

9  quote for fabricating and installing fish processing equipment in the M/V ANTARCTIC SEA, a

10  vessel AKAS was then considering buying.  All communications related to the negotiation of the

11  contract occurred via telephone and email.  AKAS II ultimately purchased the vessel, with

12  AKAS managing its day-to-day operations.[4]  The parties anticipated that the installation of the

13  fish processing equipment would occur in Uruguay, and defendants assert that it did not matter

14  to them where Marel Seattle was based, where it would source the necessary equipment, where it

15  would manufacture the machinery, or how it would staff the installation project.  Decl. of

16  Webjørn Eikrem (Dkt. # 26) at ¶ 9.  Nevertheless, defendants were aware that it was contracting

17  with a Washington company, Marel Seattle, Inc., not with its Danish predecessor or its Icelandic

18  parent company.  In addition, defendants knew that items installed on the M/V ANTARCTIC

19  SEA would be fabricated in Seattle, that other items to be used in the conversion were then being

20  warehoused in Seattle from a prior job, and that these items would be shipped from Seattle to

21  Uruguay.  Dkt. # 26-1 at 2.  Marel Seattle's bid for the project was on a time and materials basis:

22  Marel Seattle would invoice AKAS II monthly for payment.  Dkt. # 26-1 at 3-4.  The

23  relationship between the parties was to be "governed and interpreted solely in accordance with

24  _____

25      [4] Defendants make no attempt to differentiate between the contacts of AKAS and those of
    AKAS II.

26  ORDER DENYING MOTION TO DISMISS
    FOR LACK OF PERSONAL JURISDICTION          -6-

the laws that apply in the country/state in which Seller has its registered offices" unless those laws conflicted with the United Nations Convention on the International Sale of Goods of 1980. Dkt. # 26-1 at 7. Defendants also agreed to submit any dispute arising out of the contract to arbitration in Seattle.[5] Thus, defendants created "continuing relationships and obligations with" a Washington entity: in this context, it is fair to "subject [defendants] to regulation and sanctions in [Washington] for the consequences of their activities." Burger King, 471 U.S. at 473. The Court finds that defendants are not being haled into this jurisdiction through random, fortuitous, or attenuated contacts over which they had no control, but rather because of their own decision to reach into Washington to obtain services that would be performed both here and elsewhere, that would involve continuing contact and payments until the project was completed, and that compelled a Washington forum if defendants initiated the dispute resolution process. Having reviewed the relationship between the forum and the course of negotiations, the terms of the contract, and the anticipated future consequences, the Court finds that defendants engaged in purposeful activity invoking the benefits and protections of Washington.

### (2) Arising Out Of

Defendants argue that, because plaintiffs have asserted a negligence claim, their cause of action does not arise out of the forum-related contacts, *i.e.*, their contract with Marel Seattle. Dkt. # 59 at 6-7. Once purposeful availment is shown, plaintiffs must establish only that their cause of action arose out of or relates to the contract. The nature of plaintiffs' claim is

---

[5] Defendants argue that "the laws that apply in Washington" actually means federal law because this is a maritime contract. Dkt. # 59 at 5. Not only is this not the most natural reading of the choice of law provision, but state law applies to maritime contracts as long as it does not prejudice the characteristic features of maritime law or interfere with the harmony and uniformity of that law. Aqua-Marine Constructors, Inc. v. Banks, 110 F.3d 663, 668 (9th Cir. 1997). The Court need not decide the choice of law issue at this point: it is enough to note that the contract defendants signed at least had the potential to subject them to Washington law and would, if a dispute arose, likely compel their participation in this forum.

ORDER DENYING MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION          -7-

not determinative, nor must the contract be the proximate cause of Mr. Huynh's injuries.  All that is required to satisfy the second prong of the specific jurisdiction analysis is a showing that plaintiffs would not have suffered an injury "but for" defendants' forum-related conduct. Menken, 503 F.3d at 1058.  The Sixth Circuit has approved of the exercise of jurisdiction in remarkably similar circumstances.  In Theunissen v. Matthews,  the owner of a lumber yard in Canada who contracted with a Michigan trucking company to ship lumber to Michigan could be haled into the forum to answer for injuries suffered by the trucking company's employee while loading lumber in the yard.  935 F.2d 1454, 1461 (6th Cir. 1991) (finding the "arising out of" prong satisfied because, "but for Matthews' alleged business contacts with his employer, Theunissen would have sustained no injury").  Had Mr. Huynh been injured while fabricating machines for the M/V ANTARCTIC SEA in Seattle there would be little doubt that his claims were related to the contract between his employer and defendants.  Defendants offer no explanation for why the location of the injury should affect the "related to" analysis.  In both situations, had defendants not contracted with Marel Seattle for the refit of the vessel, Mr. Huynh would not have been in a position to suffer from defendants' alleged negligence.  That is all that is required under the specific jurisdiction analysis.

**(3)  Reasonableness**

Once plaintiff satisfies the first two prongs of the personal jurisdiction analysis, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable."  Menken, 503 F.3d at 1057 (internal quotation marks and citations omitted).  Having considered the seven factors set forth in CE Distribution, LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004), the Court finds that defendants' repeated forays into Washington over the past eight years, their willingness to arbitrate in this forum, Washington's interest in providing injured citizens with a remedy, and the location of plaintiff and his doctors support the conclusion that the exercise of jurisdiction in this case

ORDER DENYING MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION        -8-

1
2
3
4
5
6

would be reasonable.  The Court acknowledges that Norway's interests in regulating the conduct of the owners and operators of Norwegian-flagged vessels, its related interest in avoiding conflicting operational and safety requirements, and its willingness to hear plaintiffs' claim militates against the exercise of jurisdiction.  The split of factors does not, however, weigh in defendants' favor and does not constitute a "compelling case" that the exercise of jurisdiction would be unreasonable.

7
8
9

      For all of the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction is DENIED.

10
11
12
13

      Dated this 29th day of July, 2014.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

14
15
16
17
18
19
20
21
22
23
24
25
26

ORDER DENYING MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION          -9-